UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH W. SMILEY,

        Plaintiff,

v.                       Case No.  8:10-cv-1801-T-33AEP

COLONIAL CARE NH, LLC, d/b/a
Lexington Health and
Rehabilitative Center and
GREYSTONE TRIBECA ACQUISITION,
LLC,

        Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendants'
Motion for Summary Judgment (Doc. # 40), which was filed on
August 31, 2011.  Pro se Plaintiff Justin Smiley filed
successive "Motions to Dismiss Summary Judgment," which this
Court construes as Smiley's Response in Opposition to the
Motion for Summary Judgment. (Doc. ## 45, 47, 48).

For the reasons that follow, the Court grants Defendants'
Motion for Summary Judgment.

**I.**    **Factual Background**

Defendants are nursing homes for the elderly. (McClory
Aff. Doc. # 40-15 at ¶ 3).  Defendants became acquainted with
Smiley through the Abilities of Florida non-profit group that
assists individuals with disabilities in obtaining employment.
Id. at ¶ 4.  Even though Smiley had no relevant work

experience, Defendants hired Smiley and paid for his training so that he could earn his Certified Nursing Assistant (CNA) license and certificate. Id. Smiley worked for Defendants from March 12, 2007, until April 22, 2008, as a CNA. Id. at ¶¶ 5, 15.

Smiley worked under the supervision of Sharon Truesdale, the Director of Nursing. Id. at ¶ 3. On November 9, 2007, Smiley failed to answer a patient call light. (Smiley Dep. Doc. # 40-16 at 80-81). Instead, he was sitting in the residents' lounge watching television. (Smiley Dep. Doc. # 40-16 at 86; Doc. # 40-3). Rather than disciplining Smiley, Defendants issued Smiley a "teachable moment" slip in his file regarding "answering call light promptly; respect and dignity issues related to resident care." (Doc. # 40-3). Truesdale counseled Smiley regarding the "proper way to manage a situation" but did not discipline him. Id.

Smiley's performance did not improve. Smiley was tardy on 23 occasions between September 2, 2007, and December 8, 2007. (McClory Aff. Doc. # 40-15 at ¶ 7). Smiley agrees that he was chronically tardy but testified that being tardy at least 23 times in three months was "nothing" and even "lovely." (Smiley Dep. Doc. # 40-16 at 76, 77). In addition, Smiley admits that he did not come to work on September 10, 2007,

2

September 11, 2007, October 12, 2007, November 19, 2007, and November 21, 2007. Id. at 83-84. Smiley acknowledges that at least one of the aforementioned absences was a "no-call/no-show" absence. Id. at 82. Smiley was issued a disciplinary action report on November 25, 2007, commenting on his "excessive tardiness; absenteeism" and patient care issues. (Doc. # 40-4).

In December 2007, Smiley sustained back injuries in a car accident. (Smiley Dep. Doc. # 40-16 at 88). After a month-long leave of absence, Smiley returned to work on January 22, 2008, with physical restrictions as outlined by Hess Spinal and Medical Centers. Id. at 103; Doc. # 40-6.

On March 4, 2008, Smiley filed a Charge of Discrimination with the EEOC. (Smiley Dep. Doc. # 40-16 at 69; Doc. # 40-5 at 2). In his Charge, Smiley alleged that Defendants discriminated against him on the basis of his sex, race, and disability as follows:

> My employer is aware of my disabilities and the accommodations required due to the fact that Abilities of Pinellas helped me obtain employment here. I have been treated differently in the terms and conditions of my employment. I am orally disciplined by Sharon, the [Director of Nursing], for being late after calling and notifying the job that I would be late. Other employees are not disciplined for being tardy or absent. After having to leave work with permission I was again

disciplined.[1]

(Doc. # 40-5). Smiley testified that no one in management made any comments to him about his Charge of Discrimination. (Smiley Dep. Doc. # 40-16 at 88). On March 11, 2008, shortly after filing his Charge of Discrimination, Smiley reported to Truesdale that he was injured while moving a patient, and Truesdale directed Smiley to create an incident report. (Id. at 106; Doc. # 40-7). Defendants investigated Smiley's incident report and paid him a $6,250.00 settlement for his alleged back injuries. (Doc. # 40-9 "Settlement Agreement for Release and Waiver of Worker's Compensation Claims Under § 440.20(11)(c)(d) and (e), F.S., (2003)").[2]

On April 8, 2008, Smiley sought non-FMLA leave until April 14, 2008, due to injuries stemming from his December 2007 car accident. (Doc. # 40-11). Defendants approved the leave request, which was supported by a note from Hess Spinal and Medical Center. (Smiley Dep. 118-119; Doc. 40-11 at 2).

---

[1] Although Smiley referenced his purported disability in his Charge of Discrimination, he has not pursued a disability discrimination or retaliation claim in this action.

[2] Defendants alerted Smiley that he could take leave under the Family and Medical Leave Act, (Doc. # 40-10), but Smiley elected not to fill out any forms or otherwise apply for the leave. (Smiley Dep. Doc. # 40-16 at 118; McClory Aff. Doc. # 40-15 at ¶ 12).

On April 10, 2008, Smiley submitted another note from Hess indicating that he needed leave until April 21, 2008, and Defendants approved the request for leave. (Doc. # 40-12).

McClory, Defendants' Human Resources Manager, filed an affidavit stating that Smiley did not communicate with Defendants during the April 2008 leave periods. (McClory Aff. Doc. # 40-15 at ¶ 14). According to Defendants, Smiley did not request additional leave on or before his scheduled shift of April 22, 2008. Id. "[Smiley] did not show up for work on April 22 [and] [h]e did not call in the evening before or that morning." Id. at ¶ 15.

Smiley offered conflicting testimony regarding whether he called in before his scheduled shift. During his August 13, 2009, deposition taken in conjunction with his Worker's Compensation case, Smiley testified that he called in on April 21, 2008, indicating that he would not be at work on April 22, 2008, because he had to take his girlfriend to the hospital. (Doc. # 40-18 at 112-113). However, during his June 13, 2011, deposition Smiley testifed that he called in to state that he had "low back pain" and would not be able to come into work. (Smiley Dep. Doc. # 40-16 at 124). During the same deposition, Smiley remarked: "'Cause I called that night [April 21, 2008]– Oh, did I call that night? No. I called

that day or something like that." (Smiley Dep. Doc. # 40-16 at 129). Upon further questioning, Smiley could not remember when he called in, or if he called in at all. Id. at 129-130.[3]

On April 22, 2008, Smiley "was called by Lexington to come in and report to the Administrator's office." (McClory Aff. Doc. # 40-15 at ¶ 15). On April 22, 2008, when Smiley arrived at Defendants' facility, he "diverted" to the HR office and filled out a form requesting leave from April 23, 2008, to May 20, 2008. (Id. at ¶ 15; Doc. # 40-13). On this form he indicated, "stress related to job. doctor recommends time off to cope with working conditions. Seeing psychologist." Id.[4]

This time, rather than approving the request for more time off, Defendants terminated Smiley. Defendants considered Smiley's absence on April 22, 2008, to be a second "no-

---

[3] During his deposition taken August 13, 2009, in conjunction with his Worker's Compensation case, Smiley testified that "Sean at HR said he received a note from that saying I won't be in." (Doc. # 40-18 at 144). Smiley also testified that "someone that's up in management" told Smiley that they knew Smiley called in, "but basically they was just trying to find a reason to fire me anyway, you know, because I filed a claim against them." (Doc. # 40-18 at 116-117). When asked to identify the person in management, Smiley remarked, "I'm not telling you that." Id. at 116.

[4] However, Smiley admitted that he was not seeing a psychologist at all. (Smiley Dep. Doc. # 40-16 at 128).

call/no- show." (McClory Aff. Doc. # 40-15 at ¶ 15; Smiley Dep. Doc. # 40-16 at 129). It is not contested that Defendants' employee handbook applicable to Smiley indicated that two no-call/no- shows within a twelve-month period was punishable by termination. (Doc. # 40-14 at 6). Specifically, the handbook states, "The Center will consider that the employee has voluntarily terminated their employment when he/she fails to show for two (2) scheduled workdays in a 12 month period." Id.

## II. **Procedural History**

On August 12, 2010, Smiley filed a pro se discrimination and retaliation Complaint against Defendants, with the assistance of an unknown attorney, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), 42 U.S.C. § 1981, and the Florida Civil Rights Act of 1992, Florida Statute Section 760, et seq. (Doc. # 1). In Count One of the Complaint, Smiley alleges that Defendants subjected him to disparate treatment on the basis of his race, African American, and sex and also alleges that he was terminated due to his race and sex. In Count Two, Smiley alleges that Defendants retaliated against him for objecting to unlawful discrimination and that Defendants terminated his employment in retaliation for filing a Charge of Discrimination.

7

Defendants move for summary judgment as to each Complaint count. Smiley filed successive "Motions to Dismiss Summary Judgment," which this Court construes as Smiley's Response in Opposition to the Motion for Summary Judgment. (Doc. ## 45, 47, 48). Although Smiley's "Response" to the Motion is insufficient, the Court has construed it liberally due to Smiley's pro se status.

III. **Summary Judgment Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all

reasonable doubts in that party's favor.  See <u>Porter v. Ray</u>, 461 F.3d 1315, 1320 (11th Cir. 2006).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See <u>id</u>.  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See <u>id</u>.

## IV. <u>Analysis</u>

### A.  <u>Discrimination</u>

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2(a).[5]

---

[5] Both 42 U.S.C. § 1981 and the Florida Civil Rights Act of 1992 were modeled after Title VII and are analyzed under the same framework.  <u>See</u> <u>Turnes v. AmSouth Bank, N.A.</u>, 36 F.3d 1057, 1060 (11th Cir. 1994)(42 U.S.C. § 1981 claims are analyzed in the same manner as Title VII claims); <u>Gamboa v. Am. Airlines</u>, 170 Fed. App'x 610, 612 (11th Cir. 2006)(claims under Title VII and the Florida Civil Rights Act are analyzed under the same framework); <u>Howard v. Walgreen Co.</u>, 605 F.3d

9

A plaintiff, such as Smiley, claiming race and/or sex discrimination can prove his case through direct or circumstantial evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973); Standard v. ABEL Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998). If the plaintiff relies on circumstantial evidence, the Court applies the McDonnell Douglas burden shifting analysis. The defendant can rebut an inference of discrimination raised by the plaintiff by demonstrating that it had a legitimate, non-discriminatory reason that the plaintiff must then prove is pretext for discrimination. McDonnell Douglas Corp., 411 U.S. at 802-07.

Here, Smiley has not come forward with direct evidence of discrimination. Therefore, Smiley must prove discrimination with circumstantial evidence.

### 1. __Prima Facie Discrimination__

To survive Defendants' motion for summary judgment, Smiley must establish that he: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) can show that similarly

---

1239, 1244 at n. 4 (11th Cir. 2010)("Because retaliation claims under the FCRA are substantively similar to Title VII retaliation claims, we use the same analysis for both claims." (citations omitted)). Accordingly, the Court's Title VII analysis also disposes of Smiley's Section 1981 and Florida Civil Rights Act claims.

situated employees outside of his protected class were treated more favorably. Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 842 (11th Cir. 2000).

Defendants do not address the first three elements of Smiley's prima facie case. Because Smiley is an African American male CNA who was terminated, the Court will assume that he was a member of a protected class who was qualified for the job and faced an adverse employment action. Defendants focus their analysis on the fourth and final element of Smiley's prima facie case, zeroing in on Smiley's failure to come forward with any evidence that similarly situated employees outside of Smiley's protected class were treated more favorably than Smiley.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Furthermore, "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id.

Defendants correctly argue that Smiley has no evidence in support of this required element. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Id. at 1563. Smiley's Complaint contains *allegations* that support his theory of disparate treatment; however, at the summary judgment stage, Smiley has not come forward with an iota of evidence to support his Complaint allegations.[6]  Unsupported allegations are not

---

[6] Smiley alleges:

The [Director of Nursing] would observe Plaintiff's every action in a never ending effort to find some fault with Plaintiff's performance as a CNA. The [Director of Nursing] would not monitor non-blacks or female CNA's and treated people outside Plaintiff's protected class in a friendly, courteous manner. . . .
The [Director of Nursing] was very lenient towards all employees including CNA's outside Plaintiff's protected class (Black Men). For example on first shift, it was common for CNA's to show up from between 5 – 45 minutes late without calling in, to leave early, or simply fail to come to work and in such cases their attendance issues were generally ignored and did not result in any form of verbal or written disciplinary action by the [Director of Nursing]. However, the Plaintiff was subjected to disciplinary action by the [Director of Nursing] for the same or similar conduct.

(Doc. # 1 at ¶ 30, 32).

evidence and cannot be used to satisfy Smiley's initial burden of establishing a prima facie case.

During his deposition, Smiley indicated that Courtney Boone and Lillian Green (African American females) and Jessica, Nicole, and Katie (non-African American females) were treated more favorably than he. (Smiley Dep. Doc. # 40-16 at 36-40). However, he testified that he does not know any relevant facts about these posited comparators. <u>Id.</u> at 95. He does not know how many times they were tardy, whether they failed to answer a patient call light, whether they had absenteeism issues, or whether they had one or more no-call/no-shows. <u>Id.</u> at 92-98. He recalled that some of these other employees were late "a lot" but other than that, he could not provide details of their employment history so as to demonstrate that they were similarly situated to him. <u>Id.</u> at 98.

The quality and quantity of a comparator's misconduct must be "nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1368 (11th Cir. 1999). In his Response to the Motion for Summary Judgment, Smiley simply remarked, "[t]here definitely was a big difference in the way [Truesdale] treated blacks as well

as black males in that workplace." (Doc. # 48 at 2). This is insufficient to meet his prima facie burden.

Defendants' Human Resources Manager, Sean McClory, submitted an affidavit explaining:

> Plaintiff's attendance records show that he was late 23 time[s]; did not show up for work on five (5) occasions; [and] had a no-call/ no-show during the period from September to December 2007. These issues, along with the [call light] resident care issue . . . were the subject of a first step disciplinary action by Mrs. Truesdale. No other employee at Lexington with a similar record to Plaintiff [was] treated more favorably.

(McClory Aff. Doc. # 40-15 at ¶ 7). McClory further indicated that after the no-call/no-show on April 22, 2008, Defendants terminated Smiley and "[t]here are no other employees who worked at Lexington under Mrs. Truesdale who were not terminated after being charged with a second no-call/ no show within twelve months." (McClory Aff. Doc. # 40-15 at ¶ 15).

There is no evidence that any of the employees Smiley referred to as being treated more favorably were actually similar to Smiley. Even if such a comparator existed, there is no evidence that Defendants treated such comparator more favorably than Smiley. Accordingly, Smiley has not come forward with a prima facie case of disparate treatment discrimination.

14

In addition, to the extent that Smiley alleges that he was terminated or otherwise discriminated against on the basis of his sex or race (in addition to his disparate treatment claim), this theory of discrimination also fails. Smiley testified that the Director of Nursing never made any derogatory comments to him based on his sex or race. (Smiley Dep. Doc. # 40-16 at 44, 45). Smiley also testified that there was no one else who worked for Defendants that "was racially or gender-biased against" him. Id. at 44-46.

Nevertheless, Smiley argues that Truesdale was disrespectful to him and raised her voice at him. Id. at 41. However, upon further questioning, Smiley could not recall any disrespectful comments made by Truesdale, even though Smiley told Truesdale, his direct supervisor, to "watch your mouth cause I'm a grown man." Id. at 44. However, even assuming that Truesdale raised her voice at Smiley or treated him with "disrespect" this would not be enough to sustain Smiley's deficient discrimination claim. Title VII is neither a "general civility code" nor a statute making actionable the ordinary trials and tribulations of the workplace. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Along the same lines, Smiley contends that Truesdale discriminated against him because she was always watching over

him; however, Smiley concedes that it was Truesdale's responsibility, as Director of Nursing, to monitor him, as well as the nurses and other CNAs, on the job. (Smiley Dep. Doc. # 40-16 at 12-14).

With a record devoid of any evidence of discrimination, the Court determines that Smiley has not established a prima facie case of race or sex discrimination.

This Court has construed each and every one of Smiley's pro se submissions liberally, has drawn all inferences from the evidence in the light most favorable to Smiley, and has determined that Smiley has not established his prima facie case. Even assuming, arguendo, that Smiley had established his prima facie case, the Court grants summary judgment in favor of Defendants on Smiley's sex and race discrimination claims because Defendants have come forward with a legitimate and non-discriminatory reason for terminating Smiley, which Smiley has not rebutted.

### 2.   <u>Legitimate and Non-Discriminatory Reason</u>

If a plaintiff successfully establishes a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action it took. <u>Olmsted v. Taco Bell Corp.</u>, 141 F.3d 1457, 1460 (11th Cir. 1998). The employer's burden of rebuttal is "exceedingly

light," and the employer "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." <u>Weston-Brown v. Bank of Am. Corp.</u>, 167 Fed. App'x 76, 80 (11th Cir. 2006) (internal citations omitted).

The defendant's burden "serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 255-56 (1981). "The reason offered by an employer for an action does not have to be a reason that the judge or jurors would act on or approve. Instead, all that matters is that the employer advance an explanation for its action that is not discriminatory in nature." <u>Schoenfeld v. Babbitt</u>, 168 F.3d 1257, 1269 (11th Cir. 1999) (internal citation and quotations omitted).

The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason the employer provides is a mere pretext for the prohibited, discriminatory conduct. <u>Id.</u> A plaintiff may meet this burden by "demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). However, "[a] reason cannot . . . be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Blue v. Dunn Constr. Co., Case. No. 10-14345, 2011 U.S. App. LEXIS 23505, at *7 (11th Cir. Nov. 23, 2011)(citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

As outlined in detail above, Defendants terminated Smiley based on Defendants' belief that Smiley had two "no-call/no-shows" during a twelve-month period, conduct unrelated to Smiley's sex and race. As stated by the court in Alexander v. Fulton Cty., Ga., 207 F.3d 1303 (11th Cir. 2000), "it is not the court's role to second-guess the wisdom of an employer's decision." Id. at 1341. "We do not analyze 'whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.'" Blue, 2011 U.S. App. LEXIS 23505, at *13 (citing Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999)).

Smiley has offered only conclusory allegations of pretext in an attempt to rebut Defendants' non-discriminatory reason

for terminating him. Smiley argues that he did not technically violate the no-call/no-show policy because he alerted Defendants that he would be absent on April 22, 2008. During his August 13, 2009, deposition taken in conjunction with his Worker's Compensation case, Smiley testified that he called in on April 21, 2008, indicating that he would not be at work on April 22, 2008, because he had to take his girlfriend to the hospital. (Doc. # 40-18 at 112-113). During his June 13, 2011, deposition, however, Smiley told a different story. He indicated that he called in to state that he had "low back pain" and would not be able to come into work. (Smiley Dep. Doc. # 40-16 at 124). In addition, Smiley has suggested that someone in management, whom he refuses to identify, knew that he called in before being absent on April 22, 2008. (Smiley Dep. Doc. # 40-16 at 88) This speculative and unsupported hearsay argument. To survive summary judgment, Smiley must create a genuine issue of material fact both as to whether Defendants' reason is false and as to whether discrimination was the real reason. St. Mary's Honor Ctr., 509 U.S. at 515. Smiley has not done so. Smiley has provided no evidence that would "allow a factfinder to disbelieve [Defendants'] proffered explanation for its

actions." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1532 (11th Cir. 1997).

Even if Smiley did call in prior to his shift on the morning of April 22, 2008, his termination would not be actionable because Defendants were operating under the belief that he had not. A termination based on a good faith belief of misconduct is legitimate, even if it is later determined that no misconduct occurred. <u>EEOC v. Total Sys. Serv.</u>, 221 F.3d 1171, 1176-77 (11th Cir. 2000)("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."). Smiley has not supplied the Court with reference to any evidence contravening Defendants' assertion that Defendants believed that Smiley was a no-call/no-show employee on April 22, 2008.

This Court grants summary judgment in favor of Defendants as to Smiley's discrimination claims because Smiley has failed to establish a prima facie case of discrimination. In addition, Smiley has failed to come forward with evidence to refute Defendants' proffered legitimate and non-retaliatory business decision to terminate Smiley. As in <u>Blue</u>, Smiley has not come forward with evidence of "unlawful animus," and

this Court grants summary judgment on Smiley's discrimination claims.

**B.   Retaliation**

Having disposed of Smiley's discrimination claims, the Court moves on to Smiley's contention that Defendants retaliated against him because he filed a Charge of Discrimination and otherwise objected to illegal discrimination.

**1.   Prima Facie Retaliation**

To establish a prima facie case of retaliation in the absence of direct evidence of retaliatory intent, Smiley must show that: (1) there was a statutorily protected activity, (2) that an adverse employment action occurred, and (3) that there was a causal link between the protected activity and the adverse employment action. Dixon v. Hallmark Cos., 627 F.3d 849, 856 (11th Cir. 2010).

Smiley engaged in protected activity when he filed his Charge of Discrimination on March 4, 2008, and he faced an adverse employment action when he was terminated on April 22, 2008. To establish a causal link between the protected activity and the adverse employment action, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."

<u>Meeks v. Computer Assocs. Int'l</u>, 15 F.3d 1013, 1021 (11th Cir. 1994). In <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1266 (11th Cir. 2001), the court further remarked that "[t]he causal link element is construed broadly."

Assuming that Defendants were aware of Smiley's Charge of Discrimination, the Court finds that the close temporal proximity between the Charge of Discrimination and Smiley's termination establishes the third and final prima facie element of Smiley's retaliation claim. <u>See</u>, <u>e.g.</u>, <u>Embry v. Callahan Eye Found. Hosp.</u>, 147 Fed. App'x 819, 830-31 (11th Cir. 2005) (concluding that a two-month-and-three-day period between protected activity and adverse action, combined with decision-maker knowledge of the protected activity, was sufficient to show causation for purposes of prima facie case); <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (noting that a one-month gap between protected activity and adverse action would suggest a causal relationship, but refusing to recognize a three-month proximity between the protected activity and the adverse employment action as sufficient proof of causation). Accordingly, the Court determines that Smiley has established a prima facie case of retaliation.

## 2.   Legitimate and Non-Retaliatory Reason

Since Smiley successfully established a prima facie case, the burden shifts to Defendants to proffer a legitimate, non-retaliatory reason for the adverse employment action. Olmsted, 141 F.3d at 1460.  Smiley bears the burden of proving by a preponderance of the evidence that the reason the employer provides is a mere pretext for the prohibited, retaliatory conduct. Id.  As discussed in great detail above, Defendants prevail in this case because Defendants provided a legitimate, non-retaliatory reason for Smiley's termination, and Smiley has not shown that the reason is pretextual.  Thus, the Court grants summary judgment in favor of Defendants on Smiley's retaliation claim.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motion for Summary Judgment (Doc. # 40) is **GRANTED**.

(2) The Clerk is directed to enter Judgment in Defendants' favor, terminate all pending motions, and close the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of November, 2011.

Virgini M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel and Parties of Record